# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOE HENRY VANN, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-0275-JED-FHM |
| | ) | |
| RICK WHITTEN,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Petitioner Joe Henry Vann, Jr., a state inmate appearing *pro se*, brings this habeas corpus action under 28 U.S.C. § 2254 to challenge the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2011-4470. In that case, Petitioner is serving three concurrent life sentences following convictions on three counts of child sexual abuse. For the reasons discussed below, the Court finds and concludes that the petition for a writ of habeas corpus shall be denied.

## *BACKGROUND*

On July 30, 2011, Al.H and Av.H told their aunt that Petitioner, their stepfather, touched them inappropriately, made them touch him inappropriately, and made them watch

---

[1] Petitioner is incarcerated at the James Crabtree Correctional Center (JCCC), in Helena, Oklahoma. On September 20, 2018, Rick Whitten was appointed to serve as Warden of the JCCC. Whitten is therefore substituted in place of Jason Bryant as the party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note the substitution in the record.

"nasty movies." Doc. 8-2, at 10-11; Doc. 9-7, Trial Tr. vol. 3, at 135-42.[2]  That same night, the girls' aunt reported these disclosures to the girls' mother.  Doc. 9-7, Trial Tr. vol. 3, at 143.  Following an investigation, the State charged Petitioner, in the District Court of Tulsa County, Case No. CF-2011-4470, with five counts of sexually abusing a child under the age of 12, in violation of OKLA. STAT. tit. 21, § 843.5F.  Doc. 8-6, at 2-3.[3]

The State alleged that between July 1, 2008, and July 31, 2011, Petitioner sexually abused Al.H. by placing her hand on his penis (Count 1), by placing her hand on his penis (Count 2), and by showing her adult pornography with naked adults engaged in sexual activity (Count 3), all when she was between 6 and 9 years of age.  *Id.* at 2.  The State alleged that Petitioner sexually abused Av.H. by touching her on the vagina (Count 4), and by showing her adult pornography with naked adults engaged in sexual activity (Count 5), all when she was between 5 and 8 years of age.  *Id.* at 3.

Two witnesses testified at the preliminary hearing:  Melissa Gantz and the girls' mother (hereafter, "Mother").  Doc. 9-1, Prelim. Hr'g Tr., at 2.  Gantz testified that she conducted a forensic interview with each girl on August 2, 2011.  *Id.* at 6-7, 18.  At the time of the interviews, Al.H. was nine years old and Av.H was eight years old.  *Id.* at 6-7,

---

[2] For consistency, the Court's record citations refer to the CM/ECF page numbers in the upper right-hand corner of each document.

[3] The State also charged Petitioner with two counts of violating a protective order, in violation of OKLA. STAT. tit. 22, § 60.6 (Counts 6 and 7).  The trial court granted Petitioner's motion to sever Counts 6 and 7 for trial, and the State ultimately dismissed both counts.  Doc. 9-5, at 6-8; Doc. 9-11, Orig. Rec. at 13.  Those counts are not at issue in this habeas proceeding.

18-19.  During the interview, Al.H. disclosed that Petitioner made Al.H. touch his "wrong spot" "more than once" when she was eight years old and in the second grade.  Doc. 9-1, Prelim. Hr'g Tr., at 12-13, 18.  She also disclosed that "one time" Petitioner put his "wrong spot in her butt."  *Id.* at 14.  Al.H. identified Petitioner's "wrong spot" by circling the penis on a diagram of a male body.  *Id.*  Al.H. also told Gantz that when Petitioner made her touch his "wrong spot" it "felt squishy."  *Id.* at 16.  Av.H disclosed that Petitioner "put his finger in her pee-pee" "more than once" when she was seven years old and that it "hurt."  *Id.* at 18-22.  On a diagram of a female body, Av.H. identified the vaginal area as the "pee-pee."  *Id.* at 19-20.  Both girls told Gantz that these events occurred in their home and both reported that Petitioner also made them watch "nasty movies."  *Id.* at 14-15, 21-23.

Mother testified that on July 30, 2011, she and Petitioner were at a hotel to celebrate her birthday.  Doc. 9-1, Prelim. Hr'g Tr., at 42-43, 46.  Mother received a call from the girls' aunt, her sister (hereafter "Aunt"), reporting that Petitioner had "messed with" Al.H and Av.H.  *Id.* at 43-44.  According to Mother, Petitioner left the hotel, went home and confronted the girls, then returned to the hotel and "apologized for what he'[d] done to the girls."  *Id.* at 44-49.  Mother testified that she overheard Petitioner confront the girls because Aunt called Mother a second time when Petitioner showed up at the house after he left the hotel.  *Id.* at 45-47.  Mother also testified that on August 1, 2011, Al.H disclosed to Mother that Petitioner had been "messing with her down there."  *Id.* at 50.  Mother understood Al.H references to "down there" as disclosing that Petitioner made Al.H. touch his penis and also touched her vagina.  *Id.* at 51.  According to Mother, Al.H used the term "um-hmm" to describe both male and female private parts.  *Id.*  Two or three weeks later,

Av.H. disclosed to Mother that Petitioner had touched her "down there," which Mother understood as Av.H. disclosing that Petitioner touched Av.H.'s vagina. *Id.* at 53. Av.H. also told Mother that Petitioner made her watch "nasty movies." *Id.* at 53-54.

Before trial, the State filed notice of its intent to introduce evidence of other crimes or bad acts.[4] Doc. 8-6, at 1. Specifically, the State notified Petitioner that (1) Al.H. would testify Petitioner "exposed his penis to her on more than one occasion," "allowed himself to be seen by her while he was completely naked on more than one occasion," and "pulled (or attempted to pull) her pants down and tried to put his penis in her behind," and (2) Av.H. would testify that Petitioner "touched her rear end with his finger." *Id.* Following a pretrial hearing, the trial court found this evidence admissible under OKLA. STAT. tit. 12, § 2404(B), found that the State complied with notice requirements set forth in *Burks v. State*, 594 P.2d 771, 773 (Okla. Crim. App. 1979), and found that the evidence was also admissible under OKLA. STAT. tit. 12, § 2414 (2011) and the doctrine of *res gestae*. Doc. 9-4, *Burks* Hr'g Tr., at 7-8.

The trial court held hearings before and during trial to determine the admissibility of prior consistent out-of-court statements Al.H and Av.H made (1) when they disclosed the sexual abuse to Mother and Aunt and (2) during the forensic interviews with Gantz.

---

[4] Under Oklahoma law, other crimes evidence may be admissible under a *res gestae* exception or under OKLA. STAT. tit. 12, § 2404(B). *Baird v. State*, 400 P.3d 875, 885 (Okla. Crim. App. 2016). Section 2404(B) provides that evidence of other crimes, wrongs, or acts may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. OKLA. STAT. TIT. 12, § 2404(B). In addition, in a prosecution for child molestation, "evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." OKLA. STAT. tit. 12, § 2414.

*See* Doc. 9-4, *Burks* Hr'g Tr., at 9, 45-46; Doc. 9-7, Trial Tr. vol. 3, at 132-33; Doc. 9-8, Trial Tr. vol. 4, at 76-78. The trial court determined that all of the girls' out-of-court statements were admissible under OKLA. STAT. tit. 12, § 2803.1.[5] *Id.*

At trial, the jury heard testimony from Al.H and Av.H that was essentially consistent with the disclosures the girls' made to Gantz during the forensic interviews. *See* Doc. 9-7, Trial Tr. vol. 3, at 15-33 (Al.H. testimony), 74-91 (Av.H testimony). Aunt testified regarding the circumstances surrounding, and the substance of, the girls' initial disclosures. *Id.* at 135-50. Mother and Aunt both testified that Petitioner apologized for touching the girls. *Id.* at 146-47, 180, 182. Michael Baxter, a physician, testified he examined both girls following their disclosures. Doc. 9-8, Trial Tr. vol. 4, at 17, 27. According to Baxter, Al.H.'s examination results were normal, which he testified was not necessarily inconsistent with child sexual abuse. *Id.* at 27-28. As for Av.H, Dr. Baxter found a notch on her hymen that he testified could be consistent with her disclosure but could also be consistent with some other traumatic injury such as falling onto a bicycle. *Id.* at 29-30, 32. Gantz testified about the process and substance of the girls' forensic interviews, and the State introduced a video recording of each interview. *Id.* at 80, 82-95; Doc. 10 (State's Exhibits 4 & 5).

---

[5] As relevant here, § 2803.1 governs the admissibility of out-of-court statements made by children under 13 years of age that describe "any act of sexual contact performed with or on the child . . . by another." Such statements are admissible if (1) the trial court, after an evidentiary hearing, finds under the totality of circumstances that the statements are sufficiently reliable and trustworthy and (2) the child either testifies or is available to testify at trial or, if the child is unavailable to testify, "there is corroborating evidence of the act." OKLA. STAT. tit. 12, § 2803.1

After the state rested, Petitioner presented several witnesses to support his theories that Mother encouraged the girls to fabricate the allegations and that another male relative might have abused the girls. *See* Doc. 9-8, Trial Tr. vol. 4, at 104-148. Petitioner also testified on his own behalf, denying the allegations of abuse. *Id.* at 173-74, 183-84. The jury found Petitioner guilty as to Counts 1, 2 and 4, and found him not guilty as to Counts 3 and 5. Doc. 9-9, Trial Tr. vol. 5, at 56-59. The trial court adopted the jury's sentencing recommendations, imposed a life sentence and a $5,000 fine for each conviction, and ordered the sentences to be served concurrently. *Id.*; Doc. 9-10, Sent. Hr'g Tr., at 11-12.

Through counsel, Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising six propositions of error. Doc. 8-1, Pet'r App. Br., at 3-4. By unpublished summary opinion filed August 19, 2014, in Case No. F-2013-804, the OCCA rejected each proposition of error on the merits and affirmed Petitioner's convictions and sentences. Doc. 8-4, *Vann v. State*, No. F-2013-804 (Okla. Crim. App. 2014) (unpublished) (hereafter, "OCCA Op."), at 2-4. Petitioner did not seek a writ of certiorari from the United States Supreme Court or seek post-conviction relief in state court. Doc. 1, at 3; Doc. 8, at 1.

Petitioner filed the instant habeas petition on May 18, 2015. Doc. 1. Respondent filed a response (Doc. 8) in opposition to the petition and provided the state court records (Docs. 8, 9, 10) necessary to adjudicate Petitioner's claims. Petitioner did not file a reply.

### *DISCUSSION*

Petitioner seeks federal habeas relief on the same six grounds he presented to the OCCA on direct appeal:

Ground 1:     Because the information was overly vague, it failed to uphold minimal due process standards in two respects.

Ground 2:     Trial court erred by admission of other crimes evidence and fundamentally denied [Petitioner] a fair trial.

Ground 3:     Trial court erred by repeatedly permitting State to impermissibly reinforce witnesses [sic] testimony.

Ground 4:     Prosecutorial misconduct in three (3) instances that contravened and prejudiced [Petitioner's] fair trial rights.

Ground 5:     Because [Petitioner's] trial counsel flailed [sic] to object to multiple prejudicial evidentiary issues, trial counsel provided ineffective assistance of counsel, in two (2) respects.

Ground 6:     The cumulative effect of trial errors in this case warrants a new trial.

Doc. 1, at 5-6, 8, 10, 13-14.[6]  In response to the petition, Respondent contends the claims alleged in Grounds 2 and 3 challenge the trial court's evidentiary rulings and therefore raise issues of state law that are not cognizable on habeas review.  Doc. 8, at 15-31. Alternatively, Respondent contends Petitioner cannot show that the admission of the challenged evidence deprived him of a fair trial.  *Id.*  Respondent contends 28 U.S.C. § 2254(d) bars habeas relief as to Petitioner's remaining claims.  *Id.* at 7-15, 31-49.

---

[6] Because Petitioner appears *pro se*, this Court must liberally construe his habeas petition.  *Hall v. Bellmon*, 935 P.2d 1106, 1110 (10th Cir. 1991).  In Grounds 1 and 5, Petitioner provides some supporting facts.  Doc. 1, at 5, 13.  In the remaining grounds for relief, Petitioner refers to supporting facts purportedly stated in a non-existent attachment to his habeas petition.  *Id.*  The rule of liberal construction neither permits the Court to craft arguments on a *pro se* litigant's behalf nor requires the Court to "scour the record" for facts supporting his claims.  *Crawford v. Addison*, 526 F. App'x 893, 895 (10th Cir. 2013) (unpublished).  Nonetheless, because Petitioner raises the same claims in his habeas petition as he presented to the OCCA on direct appeal, the Court will refer to his direct appeal brief (Doc. 8-1), as needed, to understand the basis of his habeas claims.

## I.    Legal Framework

The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs this Court's review of Petitioner's habeas petition.[7]  Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This means that state prisoners who allege only violations of state law generally are not entitled to federal habeas relief.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

In addition, when the state court adjudicates the merits of a state prisoner's federal claims, a federal court may grant habeas relief only if the prisoner demonstrates that the state court's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, *id.* § 2254(d)(2).  Subsection (d)(1) guides the analysis of habeas claims alleging legal errors whereas subsection (d)(2) guides the analysis of habeas claims alleging factual errors.  *House v.*

_____

[7] In most cases, a state prisoner must file a federal habeas petition within one year of the date on which his convictions became final.  28 U.S.C. § 2244(d)(1).  In addition, before seeking federal habeas relief, the prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002).  Respondent concedes, and the Court finds, that Petitioner timely filed his habeas petition and exhausted his state court remedies as to all claims through his direct appeal.  Doc. 8, at 2.

*Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *House*, 527 F.3d at 1018. Thus, "only if [a federal court] answer[s] affirmatively the threshold question as to the existence of clearly established federal law, may [the court] ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* "To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Terry Williams*, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Terry Williams*, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). Thus, to support a claim that the state court unreasonably applied clearly established federal law, a state prisoner "must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), a state prisoner can overcome the bar to habeas relief only by showing that the state court's decision is based on "an unreasonable determination of the facts" that were developed in the state court proceeding. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). In addition, a federal court must presume the correctness of the state court's factual findings unless the prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[8]

Together, both subsections of § 2254(d) "stop[] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

---

[8] The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 571 U.S. 12, 18 (2013). However, as further discussed below, even without applying the statutory presumption of correctness, the Court finds Petitioner fails to argue, let alone show, that the OCCA committed any factual errors in rejecting his constitutional claims.

## II. Analysis

### A. Charging document failed to provide adequate notice (Ground 1)

In his first claim, Petitioner alleges he was deprived of due process because the Information was overly vague in two respects and failed to provide him with adequate notice of the charges against him. Doc. 1, at 5; Doc. 8-1, at 13-22. First, he contends that the dates alleged in Counts 1, 2 and 4 were not sufficiently specific to provide a person of common understanding with notice of what the State intended to prosecute. Doc. 1, at 5; Doc. 8-1, at 14-18. Second, he alleges that the charges in Counts 1 and 2 were not sufficiently distinct to allow a person of common understanding to distinguish between the acts being prosecuted. Doc. 1, at 5; Doc. 8-1, at 18-22.

The OCCA rejected Petitioner's claim that the Information failed to satisfy minimal due process standards. Doc. 8-4, OCCA Op., at 2. Citing *Kimbro v. State*, 857 P.2d 798 (Okla. Crim. App. 1990), the OCCA found "the Information provided [Petitioner] sufficient notice of the charges to enable him to prepare a defense."[9] *Id.* The OCCA further

---

[9] Though not readily apparent from the OCCA's opinion, the citation to *Kimbro* reflects the OCCA's rejection of Petitioner's claim that the Information was deficient based on the time range alleged. In *Kimbro*, the OCCA rejected an appellant's objection to an Information that alleged he committed an act of forcible oral sodomy with a child between April 31, 1987, and August 31, 1987. 857 P.2d at 799-800. In rejecting that claim, the OCCA reasoned that the victim was "a seven year old boy with an undeveloped sense of time" but he "testified clearly regarding one act of forcible anal sodomy and one act of forcible oral sodomy," both of which occurred when it "was hot outside." *Id.* at 800. The OCCA found the five-month time span did not "make[] the Information constitutionally infirm" and that the prosecutor "satisfied his duty to inform the accused within reasonable limits as best known by the State, the time frame in which these acts were believed to have occurred." *Id.* The OCCA further reasoned that "[t]o hold otherwise would create undue risk to child victims who for legitimate reasons are unable to specify the date or dates on which they were molested." *Id.*

reasoned, "The fact that Counts 1 and 2 described identical crimes against the same victim is not objectionable, because multiple incidents were clearly supported by her testimony." *Id.*

The Court agrees with Respondent that Petitioner is not entitled to habeas relief on this claim because the OCCA's decision is neither contrary to nor an unreasonable application of clearly established federal law. Doc. 8, at 7-15. "An Information may violate the Sixth Amendment by failing to provide adequate notice of the nature and cause of the accusations against the defendant." *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002). The Supreme Court has identified "two constitutional requirements" for a charging document. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). A charging document "is sufficient if it [1] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and [2] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Notably, Petitioner fails to identify, either in his petition or direct appeal brief, any Supreme Court cases clearly establishing that the Constitution requires a state to either allege a particular range of dates or provide a certain level of specificity with respect to multiple acts when it charges a defendant with sexually abusing a child. Petitioner's failure to cite any such cases is not surprising. As some courts have recognized, "Supreme Court precedent in this area is very general and lacks a specific application to the problems encountered in prosecutions of child sexual abuse." *Crawford v. Pennsylvania*, 714 F. App'x 177, 180 (3d Cir. 2017) (unpublished); *see also Burling v. Addison*, 451 F. App'x 761, 766 (10th Cir. 2011) (unpublished) (noting

habeas petitioner's failure to "identify any Supreme Court opinion that would require his charging document to specify the time and location of the offense to inform him fairly of the [child sexual abuse] charges against him"); *Hunter v. New Mexico*, 916 F.2d 595, 596-97, 600 (10th Cir. 1990) (citing a First Circuit decision and state court decision to summarily reject, in pre-AEDPA case, habeas petitioner's "argument that the information was deficient in failing to identify specific dates for the crimes alleged" in a child sexual assault case).[10]

The Supreme Court's "general proposition that a defendant must have adequate notice of the charges against him" "is far too abstract to establish clearly the specific rule[s] [Petitioner] needs" in this case. *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014). In his direct appeal brief, Petitioner primarily relied on federal court decisions to support his challenge to the sufficiency of the charging document. Doc. 8-1, at 16-22. But regardless of whether lower federal courts have established specific rules regarding the constitutional adequacy of charging documents in child sexual abuse cases, the Supreme Court has not. Lower federal courts may not "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Smith*, 135 S. Ct. at 4 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (*per curiam*)). Further, even if lower federal courts have adopted more specific rules for the sufficiency of charging documents in child sexual abuse cases, those rules do not constitute clearly established federal law for purposes of habeas review. The AEDPA "prohibits the federal courts of appeals [as well

---

[10] The Court cites the unpublished decisions in *Crawford* and *Burling* for their persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. 32.1(A).

as federal district courts] from relying on their own precedent to conclude that a particular constitutional principle is "clearly established" within the meaning of § 2254(d). *Smith*, 135 S. Ct. at 2.

In short, the "clearly established Federal law" with respect to Petitioner's Ground 1 claim is the general proposition announced in *Hamling*: due process is satisfied if the charging document (1) provides adequate notice of the charges and (2) provides adequate protection against future prosecution for the same acts. *United States v. Resendiz-Ponce*, 549 U.S. at 108; *Hamling*, 418 U.S. at 117. When, as here, the controlling legal principle states only a general proposition, a state court has more leeway in applying that principle. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (explaining that "evaluating whether a rule application was unreasonable requires considering the rule's specificity," thus, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations"). Significantly, in determining the sufficiency of a charging document, courts may look beyond the charging document itself and consider other materials that were provided to the defendant before trial. *See Sallahdin*, 275 F.3d at 1227 (considering "material available at the preliminary hearing and through discovery," along with the charging document, to conclude defendant received sufficient notice of charges); *Parker v. State*, 917 P.2d 980, 986 (Okla. Crim. App. 1996) (providing that the OCCA will consider preliminary hearing testimony and discovery materials to determine whether charging document satisfies due process requirements).

As discussed, Gantz testified at the preliminary hearing about her forensic interviews with Al.H. and Av.H. Doc. 9-1, Prelim. Hr'g Tr., at 6-7, 9, 18. At the time of

the interviews, Al.H. was nine years old and Av.H. was eight years old. *Id.* at 9-10, 18. Al.H. told Gantz that Petitioner sexually abused her "more than once" when she was eight years old and in the second grade by placing her hand on his penis. *Id.* at 12-13, 16-18. Av.H. told Gantz that Petitioner touched her inappropriately "more than once" beginning when she was seven years old by placing his finger in her vagina. *Id.* at 18-21. While the girls' disclosures as to the dates of the abuse were not specific, Gantz's preliminary hearing testimony regarding the girls' disclosures narrowed the time frame down from the three years alleged in the Information to approximately one year. In addition, the preliminary hearing testimony clarified that Al.H.'s disclosures supported the charges alleged in Counts 1 and 2. The OCCA found that the Information, coupled with testimony presented at the preliminary hearing, provided adequate notice for Petitioner to prepare his defense. Doc. 8-4, OCCA Op., at 2. Having reviewed the state-court record, this Court cannot say that the OCCA's application of *Hamling* was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, the Court denies habeas relief as to Ground 1.

### B.      Other crimes evidence (Ground 2)

Next, Petitioner claims he was denied a fair trial because the trial court erroneously admitted evidence of other crimes or bad acts. Doc. 1, at 6-7. On direct appeal, Petitioner primarily relied on state law to argue that the trial court plainly erred in admitting the challenged evidence. Doc. 8-1, at 22-34. The OCCA rejected this claim, reasoning,

The fact that the victims testified to acts of sexual abuse besides those

15

specifically described in the Information did not amount to plain error. Having received the victims' preliminary hearing testimony and recordings of their forensic interviews, [Petitioner] was not surprised by this evidence. The State gave notice of its intention to present such evidence and the trial court instructed the jury on the limited use of same.

Doc. 8-4, OCCA Op., at 2.

As Respondent contends, to the extent Petitioner relies on state law to reassert his challenge to the admission of other crimes evidence, he fails to state a cognizable habeas claim. Determining whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). As a result, federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998)). This means that a federal court ordinarily must determine whether, when "considered in light of the entire record, [the admission of other crimes evidence] resulted in a fundamentally unfair trial." *Id.* Here, however, by applying its own plain-error test to review Petitioner's claim, the OCCA applied the federal due-process standard. Doc. 8-4, OCCA Op., at 2; *see Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (finding "no practical distinction" between Oklahoma's formulation of plain error and the federal due-process test). Thus, the only question for this Court is whether the OCCA's application of the due-process standard was objectively unreasonable. *Id.*; *see also* 28 U.S.C. § 2254(d)(1). Petitioner neither argues nor demonstrates that the OCCA unreasonably applied the due-process standard. As the

OCCA reasoned, Petitioner had notice before trial that the State would present other crimes evidence, he received recordings of the girls' forensic interviews before trial, and the trial court twice instructed the jury regarding the limited purposes for which it could consider the other crimes evidence. Doc. 8-4, OCCA Op., at 2; *see also* Doc. 9-7, Trial Tr. vol. 3, at 221-22 (instructing jury on limited purposes of other crimes evidence after jury heard testimony from Al.H, Av.H, Mother and Aunt); Doc. 9-11, Orig. Rec., at 142 (showing same limiting instruction was given with all instructions immediately before jury deliberations). On this record, Petitioner fails to overcome § 2254(d)(1)'s bar to habeas relief. The Court therefore denies habeas relief as to Ground 2.

### C.    Impermissible reinforcement of witness testimony (Ground 3)

In Ground 3, Petitioner claims he was denied a fair trial when the trial court "repeatedly permitt[ed] [the] State to impermissibly reinforce witnesses testimony." Doc. 1, at 8. Petitioner presented four arguments on direct appeal to support this claim. First, he argued that the prosecutor improperly bolstered the testimony of Al.H and Av.H by eliciting prior consistent statements for which no foundation had been laid. Doc. 8-1, at 36-38. Second, he argued that the trial court erroneously admitted the girls' forensic interviews. *Id.* at 38-40. Third, he argued that the prosecutor improperly used *voir dire* and closing argument to reinforce the credibility of the girls' testimony. *Id.* at 40-44. Fourth, and finally, he argued that the prosecutor improperly vouched for Al.H. by eliciting testimony from Al.H. that the prosecutor had, before trial, told Al.H. to tell the truth. *Id.* at 44-46. Petitioner predicated each of these arguments on state law, but also generally asserted that the admission of the challenged evidence deprived him of a fair trial. *Id.* at

17

36-46.  Applying state law, the OCCA rejected each of these arguments, stating:

> [E]vidence of the victims' prior consistent out-of-court statements describing sexual abuse were properly admitted, after the trial court's detailed findings that the evidence was trustworthy.  The prosecutor's arguments and questions throughout the trial properly drew the jury's attention to the persuasive force of corroborative evidence (including [Petitioner's] several admissions to misconduct), and did not improperly ask the jury to accept the prosecutor's opinion of guilt based on any matters not presented in the courtroom.

Doc. 8-4, OCCA Op., at 3 (internal citations omitted).

As a preliminary matter, Petitioner's Ground 3 claim and the OCCA's decision both seem to blend separate issues of whether (1) the out-of-court statements and forensic interviews were admissible and (2) whether the prosecutor committed misconduct by emphasizing this evidence throughout the trial.  Doc. 8-1, at 36-46; Doc. 8-4, OCCA Op., at 3.  Again, to the extent Petitioner merely seeks a redetermination as to the admissibility of the challenged evidence, he fails to state a cognizable habeas claim.  *McGuire*, 502 U.S. at 67.  However, to the extent he reasserts a due process claim based either on the admission of the challenged evidence or on allegations of prosecutorial misconduct, he cannot obtain habeas relief unless he shows that the alleged errors "so infected the trial with unfairness as to deny due process of law."  *Thornburg*, 422 F.3d at 1129 (quoting *McGuire*, 502 U.S. at 75 and discussing due process implications of evidentiary error); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (explaining that habeas relief is appropriate where prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process").  In addition, while the OCCA did not explicitly reject Petitioner's due process claim, this Court must presume it considered and rejected that claim on the merits because nothing in the OCCA's decision suggests it

rejected that claim on procedural grounds. Doc. 8-4, OCCA Op., at 3; *see Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Applying *Richter*, this Court must therefore defer to the OCCA's decision unless Petitioner shows "there was no reasonable basis for the [OCCA] to deny relief." 562 U.S. at 98.

Petitioner does not even suggest that the OCCA had no reasonable basis to conclude that his trial was not rendered fundamentally unfair by the admission of the challenged evidence or by the prosecutor's challenged remarks. Having reviewed the state-court record, and giving proper deference to the OCCA's decision, the Court agrees with Respondent that Petitioner fails to overcome § 2254(d)(1)'s bar to habeas relief on this claim. Thus, the Court denies habeas relief as to Ground 3.

### D.  Prosecutorial misconduct (Ground 4)

In his fourth claim, Petitioner alleges that three additional instances of prosecutorial misconduct deprived him of a fair trial. Doc. 1, at 10. First, Petitioner alleges the prosecutor, during *voir dire*, "impermissibly compared establishing the elements of a crime to making spaghetti." Doc. 8-1, at 47-48. Second, he alleges the prosecutor engaged in "negative vouching" by implying, through cross-examination of a defense witness and comments on that witness's testimony during closing argument, that the prosecutor did not find that witness credible. *Id.* at 48-50. Third, he alleges the prosecutor made prejudicial remarks during closing argument by "capitaliz[ing] on much of the [prosecutorial] misconduct to which trial counsel failed to object." *Id.* at 50-52. The OCCA reviewed the

prosecutor's challenged comments, questions, and arguments and found no misconduct on the part of the prosecutor that would have prejudiced [Petitioner's] right to a fair trial. Doc. 8-4, OCCA Op., at 3.

The Court agrees with Respondent that the OCCA's decision is neither contrary to nor an unreasonable application of Supreme Court precedent. Doc. 8, at 31-39. As previously discussed, federal habeas relief is appropriate only where prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo*, 416 U.S. at 643. The due-process inquiry "requires an examination of the entire proceedings, including the strength of the evidence against the defendant." *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015). Though not entirely clear, it appears the OCCA applied the federal due-process standard in rejecting Petitioner's prosecutorial-misconduct claim. Doc. 8-4, OCCA Op., at 3. And, on the record presented, the Court agrees with Respondent that the OCCA's application of that standard was not objectively unreasonable. First, even assuming the "spaghetti" analogy was improper, Petitioner fails to show how it unfairly prejudiced him. As Respondent points out, the jury was properly instructed on the State's burden of proof and the elements of each crime. *See* Doc. 9-11, Orig. Rec., at 119, 145-49. And, as evidenced by its not guilty verdicts on two counts, the jury understood its duty to acquit if the state failed to prove every element of the crime. *See id.* 151, 153 (finding Petitioner not guilty as to Counts 3 and 5). Second, Petitioner fails to demonstrate, in light of the entire record and the strength of the evidence against him, that the prosecutor's questions, either on direct or cross-examination, and the prosecutor's fair comments on the evidence during closing

argument "so infected" his trial as to deny him due process. As a result, the Court denies habeas relief on Ground 4.

### E.    Ineffective assistance of trial counsel (Ground 5)

Next, Petitioner claims trial counsel was ineffective in two respects: (1) by failing to renew pretrial objections to the admission of other crimes evidence, and (2) by failing to object to the prosecutor's inappropriate "spaghetti" analogy. Doc. 1, at 13; Doc. 8-1, at 52-57.

Again, the Court agrees with Respondent that § 2254(d) bars Petitioner's request for habeas relief. Doc. 8, at 39-46. The Sixth Amendment provides criminal defendants with the right to the effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant alleging ineffective assistance of counsel must show that counsel's performance was deficient and that counsel's deficient performance resulted in prejudice. 466 U.S. at 692. Here, applying *Strickland*, the OCCA determined counsel's performance was not deficient in either respect alleged by Petitioner. Before addressing Petitioner's ineffective-assistance-of-counsel claim, the OCCA determined (1) that the trial court properly admitted other crimes evidence and prior consistent out-of-court statements made by both girls, and (2) that the prosecutor's challenged remarks were not improper. Doc. 8-4, OCCA Op., at 2-3. Citing these determinations, the OCCA reasoned that counsel's failure to object to the admission of either the challenged evidence or the prosecutor's remarks did not constitute deficient performance. *Id.* at 4.

Because the OCCA applied *Strickland*, Petitioner must overcome § 2254(d)'s bar

by showing either (1) that the OCCA's application of *Strickland* to the facts of his case was objectively unreasonable or (2) that its decision was based on an unreasonable determination of the facts. *See Pinholster*, 563 U.S. at 182; 28 U.S.C. § 2254(d). Petitioner fails to make either showing. It was entirely reasonable for the OCCA to conclude that trial counsel did not perform deficiently by failing (1) to object to the admission of admissible evidence (2) to object to the prosecutor's permissible remarks. Moreover, Petitioner neither suggests nor shows that the OCCA made an unreasonable determination of the facts in addressing this claim. Simply stated, Petitioner cannot overcome the "doubly deferential" standard that applies when, as here, a state court adjudicates the merits of an ineffective-assistance-of-counsel claim. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Pinholster*, 563 U.S. at 190 (noting that federal habeas court must take "highly deferential" look at counsel's performance under *Strickland* through "deferential lens of § 2254(d)" (quoting *Mirzayance*, 556 U.S. at 123 n.2, 124)). As a result, the Court denies habeas relief as to Ground 5.

### F. Cumulative error (Ground 6)

Finally, Petitioner claims the cumulative effect of trial errors rendered his trial fundamentally unfair. Doc. 1, at 14; Doc. 8-1, at 57-58. Finding no error, the OCCA

rejected this claim. Doc. 8-4, OCCA Op., at 4.[11]

"[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). However, a cumulative-error analysis is warranted "only if there are at least two errors." *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (quoting *Hooks*, 689 F.3d at 1194-95). Like the OCCA, this Court finds no constitutional errors; thus, the Court denies habeas relief as to Ground 6.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for a writ of habeas corpus as to all claims asserted therein.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*,

---

[11] Respondent argues this claim "must fail for lack of clearly established federal law." Doc. 8, at 47. The Tenth Circuit has recognized the existence of a circuit split as to "whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1)." *Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014) (quoting *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012)). Nevertheless, as Respondent acknowledges, *see* Doc. 8, at 48, the Tenth Circuit treats the cumulative-error doctrine as clearly established federal law for purposes of habeas review. *See Cole*, 755 F.3d at 1177 n.14; *Darks v. Mullin*, 327 F.3d 1001, 1017-18 (10th Cir. 2003).

instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." A district court may issue a certificate of appealability (COA) "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition by rejecting the merits of a petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the same reasons discussed in the analysis section of this Opinion, the Court concludes that reasonable jurists would not debate the correctness of this Court's assessment of Petitioner's federal claims. The Court therefore denies a certificate of appealability as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The Clerk of Court shall note the substitution of Rick Whitten, in place of Jason Bryant as party Respondent.

2.  The petition for a writ of habeas corpus (Doc. 1) is **denied**.

3.  A certificate of appealability is **denied**.

4.  A separate Judgment shall be entered in this case.

    ORDERED this 15th day of October 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE